# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BEATRISSA V., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | No. 19 C 319 |
| v. | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| ANDREW M. SAUL, Commissioner | ) | |
| of Social Security, [1] | ) | |
| | ) | |
|     Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff, Beatrissa V.[3] applied for Disability Insurance Benefits ("DIB") on February 4, 2016, alleging she became disabled on December 4, 2015 when she was 63 years old. (R. 65, 179.) After a hearing, an administrative law judge ("ALJ") issued a written opinion denying her application for benefits. (R. 13-24.) The Appeals Council denied Plaintiff's request for review of

---

[1] The Court substitutes Andrew M. Saul for his predecessor, Nancy A. Berryhill, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[2] On February 21, 2019, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to a United States Magistrate Judge for all proceedings, including entry of final judgment. (D.E. 10.) On May 31, 2019, this case was reassigned to this Court for all proceedings. (D.E. 14.)

[3] The Court in this opinion is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id*. A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id*., citing *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing, and it is not clear whether any party could make that showing in this matter. In any event, the Court is abiding by IOP 22 subject to the Court's concerns as stated.

the ALJ's decision (R. 1-6), making the ALJ's decision the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Plaintiff seeks remand of the Commissioner's decision denying her applications for benefits (D.E. 13), and the Commissioner has asked the Court to affirm the decision. (D.E. 18.) The matter is now fully briefed.

I. **Administrative Record**

    A. **Medical Evidence**

Plaintiff was 63 years old when her job as an electronics products specialist was eliminated on December 4, 2015. (R. 213.) She contends her disability began that day with physical and mental health symptoms, including "nervous shock/breakdown, chest spasms, stomach aches, tight muscles, joints, recurrent panic attacks, sleep apnea, mood disturbance, difficulty thinking or concentrate (sic), inability to walk or drive over 20 minutes, social withdrawal." (R. 222.)

Plaintiff has a history of arthritis in her knees and wrist and has been treated for those conditions as well as ulcerative colitis, and depression and anxiety by her primary care doctor, Elana Edwards, M.D., since 2011. (R. 589.) In August 2015, Plaintiff complained of intermittent back pain; an examination revealed decreased range of motion and tenderness of her spine (R. 1765.) On October 24, 2015 she reported joint deformity, stiffness, and arthralgia,[4] as well as fatigue, memory problems and depression. (R. 1751.) Dr. Edwards diagnosed her with arthropathy and unspecified osteoarthritis, gave her pain medications and ordered her to begin physical therapy. (R. 1754.) On February 3, 2016, after an ultrasound, Dr. Edwards diagnosed Plaintiff with a Baker's cyst in her right knee, accompanied by swelling, tenderness, and decreased range of

---

[4] Arthralgias is a term that describes joint pain or stiffness. https://www.hopkinsmedicine.org/health/conditions-and-diseases/arthralgia. (*visited on* September 14, 2020.)

2

motion. (R. 1468, 1746.)[5] Plaintiff had an MRI in March 2016 that confirmed the diagnosis and noted "mild degenerative changes" in her right knee. (R. 1471-72.) Dr. Edwards prescribed pain medication and support for Plaintiff's knee. (R. 1747.) The doctor also prescribed Xanax for Plaintiff's anxiety and depression, which she took from approximately 2011 to 2016.

On March 2, 2016, Dr. Edwards completed a psychiatric report form and an "Arthritic Report" as part of Plaintiff's application for benefits, diagnosing her with ulcerative colitis, recurrent UTI, iron-deficiency anemia, osteoarthritis, anxiety and depression. (R. 406.)[6] In the arthritic report, Dr. Edwards noted that Plaintiff had pain, tenderness, swelling, redness, stiffness, and fatigue, as well as limited flexion and extension in her right knee. (R. 416.) She also had an antalgic gait. (*Id.*) Dr. Edwards did not check the box that Plaintiff needed an assistive device to walk and wrote that Plaintiff could stand or walk for 30 minutes and sit or stand for up to two hours at a time. (*Id.*) Plaintiff needed to be able to change positions because of low back pain, and physical therapy partially managed her symptoms. (R. 417.)

From May 2016 through August 2016, Plaintiff visited Dr. Edwards multiple times to be treated for a flare-up of her ulcerative colitis which caused fatigue, weakness, stomach pain, and frequent diarrhea. (R. 1642-1716.) On August 17, 2016, Plaintiff visited Dr. Edwards complaining of, among other things, fatigue, arthralgias, back pain, muscle pain, shoulder pain with stiffness, headaches, memory loss, depression, anxiety, and disturbances of emotion. (R. 1629.) On that date, Dr. Edwards completed a residual functional capacity ("RFC") assessment for Plaintiff which stated that she'd been treating Plaintiff since 2011, as often as twice per month in the most recent

---

[5] A Baker's cyst is a fluid-filled cyst that causes a bulge and feeling of tightness behind the knee and that often becomes more painful when the knee is fully extended or flexed or when the patient is active. https://www.mayoclinic.org/diseases-conditions/bakers-cyst/symptoms-causes/syc-20369950, *visited on* September 28, 2020.

[6] Because our remand is based on the ALJ's treatment of the physical RFC, we are omitting discussion of the evidence concerning Plaintiff's mental health impairments and treatment, except where needed for clarity.

3

year. (R. 732.) Dr. Edwards diagnosed Plaintiff with ulcerative colitis, osteoarthritis and recurrent depression, describing it as a "lifelong condition with frequent exacerbations." (*Id.*) With respect to Plaintiff's arthritis, Dr. Edwards noted that she had limited range of motion in her hands, knees and hip joints and that she would be expected to "frequently" experience pain or other symptoms severe enough to interfere with her ability to work. (*Id.*) Dr. Edwards also wrote that Plaintiff could sit or stand for 10 – 15 minutes at a time before needing to change position, and that she could sit, stand or walk for a total of two hours in an eight-hour workday. (R. 732-33.) She would need to take up to six unscheduled breaks per day because of muscle aches, fatigue, diarrhea, and frequent urination. (*Id.*) Moreover, Plaintiff could never lift ten pounds and was limited in using her hands and fingers for fine motor skills to 20 percent of the workday. (*Id.*)

Plaintiff continued to visit Dr. Edwards through at least May 2017 for treatment of various issues including continued joint pain and stiffness, particularly in her right knee but also in her back and neck, anxiety, depression, ulcerative colitis and fatigue. (R. 1516, 1526, 1579, 1589, 1600, 1629.) Physical therapy helped alleviate some of Plaintiff's symptoms, and she continued to report feeling better at some appointments and experiencing joint pain and stiffness at others. (*Id.*)

On October 9, 2017, Dr. Edwards wrote a letter regarding Plaintiff's health in connection with her claim for benefits. (R. 1951.) In the letter, Dr. Edwards stated that Plaintiff's health had deteriorated in the past two years, particularly with respect to her ulcerative colitis and "depression/anxiety; worsening memory loss of symptoms." (*Id.*) At the end of the letter, Dr. Edwards opined that because of her health issues, Plaintiff would "not be able to work 8 hours a day, 5 days a week on a consistent and reliable basis." (*Id.*)

### B. Agency Evidence

On April 2, 2016, Plaintiff underwent a consultative examination with Agency doctor Jorge Aliaga, M.D. (R. 438.) He found that Plaintiff had full range of motion in her upper and lower extremities and a normal gait without assistive device. (R. 440.) Dr. Aliaga noted that Plaintiff had no difficulty getting on and off the examination table, but that she had moderate difficulty with heel walk and toe walk and was unable to walk with a tandem gait or perform squatting and arising. (R. 441.) She had no trouble balancing on one leg. (*Id.*) In July 2016, non-examining doctor Milla Bacalla, M.D. completed a disability determination for the Agency, concluding that Plaintiff had no severe physical impairments. (R. 85.)

### C. Hearing Testimony

Plaintiff testified that she was unable to perform any jobs that required physical stamina because her ulcerative colitis made her weak, and also caused her to need a lot of bathroom breaks. (R. 40.) At the time of the hearing, Plaintiff was seeing her internist and psychiatrist to manage all of her health issues; she was not seeing any other specialists. (R. 42.) With respect to physical pain in her back, neck and knee, Plaintiff explained that it would improve for a period of time with physical therapy and then worsen again, at which point she would visit her internist. The ALJ questioned Plaintiff about why Dr. Edwards did not recommend that she get x-rays or other imaging of her neck or back and the Plaintiff answered that her doctor had never asked or said anything about those sorts of tests. (R. 44.) She had never been prescribed a cane but had started using one six months before the hearing for stability and because she got dizzy. (*Id.*)

Plaintiff testified that she could walk about a block and stand for no more than 30 minutes at a time and although she could lift five pounds, she couldn't hold it for long. (R. 51.) She was able to perform light household chores such as cleaning off her kitchen counters and putting her

own dishes in the dishwasher. (R. 53.) She could load the washing machine but her husband had to move the wet clothes to the dryer. (R. 54.) Plaintiff testified that she could fold laundry while seated. (*Id.*)

Medical expert Ellen Rozenfeld, M.D. testified about Plaintiff's mental health, but not her physical impairments, opining that Plaintiff had moderate limitations in her social functioning, concentration, persistence and pace, and ability to adapt. (*Id.*) In Dr. Rozenfeld's opinion, Plaintiff had an RFC that was limited to tasks that were simple and routine in nature to help her avoid being distracted by psychological symptoms, minimal contact with the public, occasional contact with co-workers and supervisors and a routine workplace setting with predictable and simple decision making. (R. 60.) The vocational expert testified that with the exception of a year when Plaintiff had worked as a caregiver for her parents at the medium to heavy level, all of her previous jobs (as various types of electronic products specialists) had been sedentary to light, but that Plaintiff was unable to perform any of her previous work because of mental health limitations described by Dr. Rozenfeld. (R. 62-63.)[7] The ALJ asked the VE to describe jobs Plaintiff could perform that were at the medium level of exertion and that included Dr. Rozenfeld's RFC opinion, and the VE testified that available jobs included janitor, dishwasher, and hand packager. (*Id.*)

### D. ALJ Opinion

On March 27, 2018, the ALJ issued a written opinion finding that Plaintiff was not under a disability within the meaning of the Social Security Act from her alleged onset date of December 4, 2015, through the date of the decision. (R. 15.) At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity during this time period. (R. 16.) At Step Two, the ALJ found

---

[7] The record does not indicate when Plaintiff worked as a caregiver for her parents, but as she worked for her most recent employer, Zebra Technologies, from 2006 – 2015, we infer that the caregiving job occurred before that. (R. 193, 223.)

Plaintiff had the following severe impairments: depression, anxiety and panic disorder, and arthralgias. (*Id.*) At Step Three, the ALJ found Plaintiff's impairments did not meet or medically equal the severity of a listing. (R. *Id.*) In making this determination, the ALJ considered the "Paragraph B" criteria and determined that Plaintiff's limitations were moderate. (R. 16-17.) Because Plaintiff did not have two "marked" or one "extreme" limitation, the Paragraph B criteria were not satisfied. (*Id.*)

Next, the ALJ assigned Plaintiff an RFC for medium work, except limited to "simple and routine 1-3 step instructions, with routine changes only; minimal brief and superficial contact with the general public; and she should work primarily alone, having no more than occasional contact with co-workers and supervisors." (R. 17.)

The ALJ then discussed the medical record, summarizing Plaintiff's hearing testimony and describing Plaintiff's visits to her doctors between August 2015 and May 2017, including her diagnosis of a Baker's cyst in her right knee, her intermittent complaints of and treatment for back, neck and knee pain and stiffness, which were sometimes improved with physical therapy, and her general feeling of weakness caused by her ulcerative colitis (R. 18-19.) The ALJ pointed out that Plaintiff never underwent any diagnostic imaging of her back or neck, was never referred to a pain specialist, and never visited the emergency room because of pain. (R. 20.) With respect to Plaintiff's mental impairments, the ALJ recognized that Plaintiff began seeing a psychiatrist in 2016 but stated that Plaintiff never presented with extreme symptoms of anxiety or depression, was never recommended to be hospitalized, and was never recommended treatment beyond a monthly visit with her doctor. (*Id.*)

With respect to the opinion evidence, the ALJ gave little weight to Dr. Edwards' August 2016 RFC on the ground that it imposed significantly more restrictions on Plaintiff than Dr.

7

Edwards' March 2016 Arthritic Report even though the medical evidence in the interim did not indicate any marked changes in the Plaintiff's condition that would result in such severe limitations. (R. 21.) The ALJ also gave little weight to Dr. Edwards' October 2017 opinion of Plaintiff's physical capabilities, finding the opinion inconsistent with the conservative course of treatment the doctor had prescribed for an impairment that was only moderate in severity, including the fact that Dr. Edwards never referred Plaintiff for diagnostic imaging of her neck or spine and never referred her to a pain specialist for treatment. (*Id.*) Finally, the ALJ gave little weight to Dr. Edwards' March 2016 Arthritic Report on the ground that it was substantially inconsistent with the later August RFC. (*Id.*)

The ALJ gave great weight to the physical assessment portion of Plaintiff's July 2016 Disability Determination explanation because it was consistent with Plaintiff's conservative course of treatment. (R. 22.)

## II. DISCUSSION

### A. Standard of Review

The Court's review of the ALJ's decision "is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). "The ALJ's decision will be upheld if supported by substantial evidence, which means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk*, 923 F.3d at 496 (internal citations and quotations omitted). "An ALJ need not address every piece of evidence, but he must establish a logical connection between the evidence and his conclusion," *i.e.*, "build an accurate and logical bridge" between the evidence and his conclusion. *Lanigan v. Berryhill*, 865 F.3d 558, 563 (7th Cir. 2017). "Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ

8

concerning whether the claimant is disabled." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (internal citations and quotations omitted).

Relevant here, prior to Step Four, an ALJ determines a claimant's RFC, or "what an individual can still do despite his or her limitations." S.S.R. 96-8p. The ALJ must explain how he reached his conclusion about the residual functional capacity of a claimant and support that conclusion with evidence from the record. *See, e.g.*, SSR 96-8p, case 1996 WL 374184, at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence[.]").

The ALJ assigned Plaintiff an RFC for a full range of medium work. Medium work requires the ability to lift up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.[8] Social Security guidance further describe a full range of medium work as generally being able to stand or walk, off and on, for a total of approximately 6 hours in an 8-hour workday.[9] Moreover, "the considerable lifting required for the full range of medium work usually requires frequent bending-stooping. . . [and] Flexibility of the knees as well as the torso is important for this activity." *Id.*

Plaintiff makes three arguments in favor or remand: (1) the ALJ's analysis of Plaintiff's credibility was flawed because it violated SSR 16-3p; (2) the ALJ's RFC determination was faulty; and (3) the ALJ improperly weighed the medical opinions.

We remand because the ALJ failed to "build a logical bridge" from the evidence to her conclusion that Plaintiff could perform a full range of medium work, specifically with respect to her treatment of the medical opinions.

---

[8] https://www.ssa.gov/OP_Home/cfr20/404/404-1567.htm, *visited on* September 21, 2020.
[9] https://www.ssa.gov/OP_Home/rulings/di/02/SSR83-10-di-02.html, *visited on* September 21, 2020.

**B.     Medical Opinions**

The ALJ's treatment of the medical opinions as support for her RFC was flawed. An ALJ must give a treating physician's opinion controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *Kaminski v. Berryhill*, 894 F.3d 870, 874, 874 n.1 (7th Cir. 2018).[10] Moreover, the ALJ must give good reasons for the weight that it assigns a treating physician's opinion. *Bates v. Colvin*, 736 F.3d 1093, 1101 (7th Cir. 2013). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527(c).

The ALJ committed a number of errors when she gave all three of Dr. Edwards' opinions little weight. As we described above, the ALJ gave little weight to Dr. Edwards' August 2016 opinion because it was more restrictive than the March 2016 opinion and there was no evidence that Plaintiff's condition worsened so as to justify the more restrictive RFC. The ALJ gave little weight to the March 2016 opinion on the ground that it was inconsistent with the August 2016 opinion. Both of these decisions are flawed.

*First,* the ALJ ignored medical evidence that supported Dr. Edwards' August 2016 RFC opinion. While it is true that Plaintiff's pain and stiffness associated with her knees, neck and back did not change significantly between Dr. Edwards' March 2016 RFC and the one she completed

---

[10] This is the standard for analyzing an ALJ's treatment of treating doctor's opinions for claims filed prior to March 27, 2017, which requires the ALJ to explain the reasons for not assigning controlling weight to the treating physician opinions. *Kaminski,* 894 F.3d at 874 n.1.

10

in August 2016, her treatment notes from that span of time are replete with discussion of Plaintiff's treatment for her ulcerative colitis, which included fatigue, abdominal pain, bloating, diarrhea, blood in her stool, frequent urination and nausea, for which she took steroids and other medications. (R. 1621-28, 1643-48.) Dr. Edwards' August 2016 RFC included the recommendation that Plaintiff would need up to six unscheduled breaks per day to manage these symptoms and Plaintiff testified to the same. The ALJ did not identify any evidence to contradict Dr. Edwards' opinion about Plaintiff's need for unscheduled breaks and she does not address Plaintiff's treatment for ulcerative colitis at all. Therefore, the ALJ weighed – and then discounted – the August 2016 opinion after considering only evidence about Plaintiff's arthritis while ignoring evidence about Plaintiff's ulcerative colitis that was consistent with Dr Edwards' recommendations. This impermissible "cherry picking" is grounds for remand. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). [11]

*Second,* the ALJ's treatment of Dr. Edwards' first opinion on its own is deficient. The ALJ gave little weight to the March 2016 opinion – an opinion that contained the fewest physical restrictions on Plaintiff – because it was inconsistent with the August 2016 opinion. But this justification is lacking; regardless of how much weight the August 2016 opinion was entitled to on its own, the ALJ's reasoning says nothing about the reliability of the March 2016 opinion.

As the ALJ acknowledges, Dr. Edwards was Plaintiff's long-time treating doctor and her opinion is entitled to controlling weight if it is supported by the medical evidence. The ALJ's brief treatment of the March 2016 opinion neither identifies inconsistencies with the record nor acknowledges the medical evidence that supports the opinion. *See Brown v. Colvin*, 845 F.3d 247,

---

[11] The ALJ gave Dr. Edwards October 2017 opinion little weight because it assessed physical limitations that were inconsistent with Plaintiff's conservative course of treatment. As with her analysis of Dr. Edwards' August 2016 opinion, the ALJ failed to acknowledge those parts of Dr. Edwards's opinion that concerned Plaintiff's limitations due to her ulcerative colitis, which the doctor described as having worsened over the previous two years. (R. 21.)

11

253 (7th Cir. 2016) (treating doctor's notes that showed largely normal examinations but also documented complaints of pain did not contradict doctor's opinion, particularly where ALJ cited no evidence of inconsistency with the opinion).

The medical evidence shows that Plaintiff was diagnosed with a Baker's cyst in her right knee in February 2016 and was unable to extend or flex that knee when Dr. Edwards examined her in March 2016.  The Agency doctor who examined Plaintiff in April 2016 noted that Plaintiff could not perform several tests of her gait and also that she was unable to squat or arise. The medical record from 2015 to 2017 consistently recounts Plaintiff's complaints of pain and stiffness in her joints which, while intermittent and mixed with examinations showing that physical therapy provided temporary relief and benefit, never resolved completely. In *Brown,* the Seventh Circuit remanded because the ALJ failed to apply properly the treating physician rule where there was no evidence to contradict the physical limitations imposed by the treating doctor. The fact that the medical evidence documented normal gait, leg raises, and reflexes did not speak to the doctor's opinions about Plaintiff's need to sit, rest, and be absent from work, which made up the bulk of the RFC. 845 F.3d at 253.  Indeed, the Court pointed out that many of the "normal" observations and treating notes had nothing to do with the doctor's RFC opinion at all. *Id.*

In the case of Plaintiff, facts indicating that the Agency doctor observed normal range of motion and no difficulty getting on and off the examination table, and that Plaintiff denied pain at some of her appointments with Dr. Edwards, have little bearing on Dr. Edwards's opinion that Plaintiff could only walk for 30 minutes at a time or could sit or stand for only two hours. For these reasons, we find that the ALJ erred in giving little weight to Dr. Edwards's opinions, which, if accepted, would have demonstrated that Plaintiff was unable to perform work at the medium level of exertion.

## CONCLUSION

For the foregoing reasons, we grant Plaintiff's request for remand (D.E. 13) and deny the Commissioner's motion to affirm (D.E. 18).

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: October 30, 2020**